570 So.2d 1349 (1990)
BEN M. HOGAN COMPANY, INC., Appellant,
v.
QDA INVESTMENT CORPORATION, Appellee.
No. 90-1221.
District Court of Appeal of Florida, Third District.
October 2, 1990.
Holland & Knight and Judith Korchin and Tracy Nichols, Miami, for appellant.
*1350 Paul, Landy, Beiley & Harper and Richard E. Brodsky, Miami, for appellee.
Before JORGENSON, COPE and GODERICH, JJ.
JORGENSON, Judge.
Ben M. Hogan Company, Inc. [Hogan] appeals from a nonfinal order granting QDA Investment Corp.'s [QDA] Motion for Reconsideration, in effect denying Hogan's motion to dismiss for lack of in personam jurisdiction. We affirm.
Hogan, an Arkansas corporation, engaged the services of QDA, an investment banking firm that is a Florida corporation with its only place of business in Miami, to broker a two million dollar promissory note. Hogan first had contacted Flexi Financial, Inc., of Clearwater, which had referred Hogan to QDA. Hogan and QDA entered into a contract executed in Arkansas. The contract provided that, for the next six months, QDA would assist Hogan in seeking financing for the note. The parties contemplated that QDA's efforts to obtain a buyer would not be confined to Florida investors but would also look outside of Florida for investors familiar with the maker of the note, a European entity.[1] Hogan agreed to pay a 5% commission on the financing obtained and sent a $5,000 retainer to QDA in Miami. Throughout the course of the contract, Hogan kept itself apprised of QDA's activities through telephone calls, letters, and telefax. QDA was not successful in obtaining an investor. When Hogan sold the note, QDA sued in Dade County for its contractual fee. In its complaint, QDA alleged that jurisdiction lay pursuant to section 48.193(1)(g), Florida Statutes (1989), because Hogan had breached a contract in Florida by "failing to perform acts required by the contract to be performed in this state." Hogan moved to dismiss for lack of personal jurisdiction alleging that, although the provisions of Florida's long-arm statute applied, Hogan lacked sufficient minimum contacts with Florida to satisfy due process requirements. The trial court initially granted the motion; upon reconsideration, however, the trial court reversed itself and denied the motion.
The trial court properly found that Hogan had sufficient minimum contacts with Florida. The Florida Supreme Court recently held that to decide whether in personam jurisdiction lies over a foreign defendant courts must determine compliance with both Florida's long-arm statute and the constitutional due process test of minimum contacts. Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla. 1989). Although "[t]he inquiry into whether a foreign defendant has invoked the benefits and protections of the laws of the forum State does not lend itself to a bright-line rule," Pellerito Foods, Inc. v. American Conveyors Corp., 542 So.2d 426, 428 (Fla. 3d DCA 1989), the constitutional touchstone of the minimum contacts analysis is whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542 (1985) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 568, 62 L.Ed.2d 490, 501 (1980)). A minimum contacts analysis requires a careful examination of the facts of the case. "[P]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing ... must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." Burger King, 471 U.S. at 479, 105 S.Ct. at 2185, 85 L.Ed.2d at 545. In this case, Hogan reached out to a Florida corporation for assistance in refinancing or selling its two-million-dollar note. Once the business relationship was established between Hogan and QDA, Hogan maintained a watchful eye over QDA's activities. Hogan *1351 thus purposefully availed itself of the privilege of conducting business in Florida and must now answer for the consequences of that privilege in a Florida court. Compare Global Servicios, S.A. v. Toplis & Harding, Inc., 561 So.2d 674 (Fla. 3d DCA 1990) (where foreign corporation's contact with Florida merely fortuitous, personal jurisdiction did not lie).
Hogan argues that, because a portion of QDA's search for investors was conducted outside of the State of Florida, Hogan had not availed itself of the privilege of conducting business within Florida. We find that argument without merit. Although QDA may have sought to attract foreign investors, QDA performed its services on behalf of Hogan at QDA's place of business in Miami. In Venetian Salami, the supreme court opined that a foreign corporation that contracted for the services of a Florida business to investigate the collectibility of a large receivable in Florida, New York, and Canada had sufficient minimum contacts with Florida to subject it to the jurisdiction of Florida courts. 554 So.2d at 503. The Florida corporation had performed its services in Florida, Canada, and New York and had received payment for those services in Florida. Id.[2] Likewise, in this case, although some of QDA's activities were focused on foreign investors, it performed its work in Florida and received payment in Florida, and Hogan repeatedly contacted QDA's offices in Florida in connection with the performance of QDA's contractual duties. Under this factual scenario, the trial court's finding that Hogan was subject to jurisdiction in Florida was correct.
Affirmed.
NOTES
[1] Eight of the eleven investors solicited by QDA were non-Florida residents.
[2] In Venetian Salami, the supreme court did not, in fact, decide whether the foreign defendant was subject to jurisdiction in a Florida court because the parties' jurisdictional affidavits conflicted. The court instead remanded for an evidentiary hearing on the issue of jurisdiction. 554 So.2d at 503. Nevertheless, the court's analysis is instructive in this case.