DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**WRAPAPAN, LLC,** a New York Limited Liability Company,
**LORRAINE GIRARD,** and **ROBERT POLLIFRONE,**
Appellants,

v.

**JEFF ELSON,**
Appellee.

No. 4D20-2454

[June 9, 2021]

Appeal of a nonfinal order from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Lisa S. Small, Judge; L.T. Case No. 50-2019-CA-015840-XXXX-MB.

Gregory R. Elder and Beverly D. Eisenstadt of the Law Offices of Gregory R. Elder, PLLC, Boca Raton, for appellants.

John M. Mullin and Sarah M. Leon of Tripp Scott, P.A., Fort Lauderdale, for appellee.

CIKLIN, J.

Appellants Wrapapan, LLC, Lorraine Girard, and Robert Pollifrone (hereinafter referred to collectively as, "Wrapapan") appeal from a nonfinal order denying their motion to dismiss for lack of personal jurisdiction. *See* Fla. R. App. P. 9.130(a)(3)(C)(i). The motion to dismiss was directed to appellee Jeff Elson's ("Elson") complaint for declaratory relief seeking a judicial determination of his ownership interest in a "business venture" involving Wrapapan. We reverse because no showing was made that Wrapapan had sufficient statutory jurisdiction or minimum contacts with Florida to satisfy due process. *See Astro Aluminum Treating Co. v. Inter Contal, Inc.*, 296 So. 3d 462, 464 (Fla. 4th DCA 2020). More specifically, nothing about the anticipated business venture required any type of performance in Florida. *See Stonepeak Partners, LP v. Tall Tower Capital, LLC*, 231 So. 3d 548, 557 (Fla. 2d DCA 2017).

***Background***

The operative complaint alleged that New York-based Wrapapan agreed to carry on a business venture with Elson, a Florida resident. Though the parties engaged a New York attorney to prepare documents to memorialize the parties' respective ownership interests, no agreements were ever executed.

Elson alleged that the parties anticipated that the New York LLC entity Wrapapan, would ultimately transact "substantial business activity" in Florida by selling and distributing its goods. Elson also alleged that Wrapapan "breached oral agreements" to enter formal written contracts with him. Elson alleged that, as a result, Wrapapan was subject to jurisdiction in Florida pursuant to section 48.193, Florida Statutes (2020).

### *Motion to Dismiss and Submissions*

There is a two-step analysis to determine whether a Florida court has personal jurisdiction over a nonresident defendant. Step one focuses on a plaintiff's complaint and whether it either tracks the language of Florida's long-arm statute or alleges facts sufficient to show that a defendant's actions fit within one or more subsections of the statute. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989); *Int'l Univ. of Health Scis. Ltd., Inc. v. Abeles*, 299 So. 3d 405, 407 (Fla. 4th DCA 2020).

Under the second step, assuming the complaint is legally sufficient, the trial court must consider whether a defendant has satisfied "minimum contacts" with Florida such that the exercise of jurisdiction over a defendant complies with due process requirements and does not offend "traditional notions of fair play and substantial justice." *Venetian Salami*, 554 So. 2d at 502 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also Astro Aluminum*, 296 So. 3d at 466; *Johnny's Pool Super Ctr., Inc. v. Foreverpools Caribbean, LLC*, 307 So. 3d 832, 836 (Fla. 3d DCA 2020) (recognizing that the statutory prong of the analysis is applied broadly, while the constitutional due process prong imposes a more restrictive requirement that is controlled by Supreme Court precedent interpreting the due process clause).

Wrapapan moved to dismiss the complaint challenging both the sufficiency of the allegations contained within the complaint and the due process-based minimum contacts test. Wrapapan furnished individual declarations wherein the parties attested to their New York residency and that they never conducted business in Florida. They alleged the absence of any communications between Wrapapan and Elson in Florida and that even the unexecuted agreements were drafted in New York.

2

In response, Elson filed his affidavit and the deposition of a New York attorney who drafted the unsigned business documents. The attorney recalled two meetings in New York—none in Florida—and many phone conversations. He also recalled that sometime during these contractual discussions, Elson moved his permanent residence from New York to Florida. The New York attorney received an email with a signature block that showed a Florida address for Elson. He added that he did not know what Wrapapan might have known about Elson's residence or location.

Within his affidavit, Elson attested that he was a Florida resident well before the business discussions, that Wrapapan knew this at all times, and that while Elson was living in Florida, there were phone calls, emails, and texts among the parties regarding the "business." Elson alleged that he traveled from Fort Lauderdale to Chicago to meet Wrapapan's Lorraine Girard so that they could attend a trade show together, and that he traveled to other places on the business's behalf, "all while [Elson was] living in Florida." Elson added that prior to a trip to China, Girard supplied him with proposed theme images for the business which she sent to Elson in Florida.

The trial court denied the motion to dismiss, finding that Elson had established personal jurisdiction over the nonresident appellants.

### *Analysis*

"A trial court's ruling on a motion to dismiss for lack of personal jurisdiction is reviewed de novo." *NHB Advisors, Inc. v. Czyzyk*, 95 So. 3d 444, 447 (Fla. 4th DCA 2012). We set forth our analysis to explain why the trial court erred.

*Statutory Basis*

To establish the first prong of the personal jurisdiction analysis, "the plaintiff must allege sufficient jurisdictional facts to bring the action within the ambit of Florida's long-arm statute." *Astro Aluminum*, 296 So. 3d at 464. In relevant part, the statute provides:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

§ 48.193(1)(a)1., Fla. Stat. (2020).

"For purposes of section 48.193(1)(a)(1), to demonstrate that a nonresident defendant is 'carrying on business' the defendant's activities 'must be considered collectively and show a general course of business activity in the state for pecuniary benefit.'" *Stonepeak Partners*, 231 So. 3d at 555 (quoting *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 Fed. Appx. 779, 783 (11th Cir. 2014)). "Factors to consider in making this determination include: (1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue gleaned from Florida clients." *Id.* (citation and quotation marks omitted).

In its denial of the motion to dismiss, the trial court determined that Elson established jurisdiction over Wrapapan pursuant to section 48.193 by "demonstrating that Defendants carried on a business venture in Florida." The trial court relied on *Sutton v. Smith*, 603 So. 2d 693 (Fla. 2d DCA 2017), which is distinguishable.

*Sutton* involved an alleged breach of a golf sponsorship agreement between a Florida plaintiff and a Michigan defendant, a partnership. *Id.* at 694. Plaintiff Sutton lived in Florida, was expected to and did play PGA tour events in Florida, and was also to be provided health insurance in Florida. *Id.* at 698. Further, all earnings from Sutton's golf-related activities in Florida and elsewhere were to be paid by the PGA from its headquarters and bank account in Florida to the partnership account in Michigan, and the partnership was required to disburse funds from the partnership account to Sutton's Florida bank account to enable him to perform golf-related activities and participate in tour events for the benefit of the business venture. *Id.* at 698-99. The appellate court reversed the trial court's dismissal of the action for lack of jurisdiction, concluding that the undisputed facts placed what was clearly a joint business venture within the long arm statute and showed that its members were operating, conducting, engaging in, or carrying on the business venture in Florida. *Id.* at 699.

Here, there were only allegations of a business venture, but the defendant's affidavits refuted those allegations. While Elson may have

4

*believed* he was part of a business venture, established law belies such a conclusion. There was no executed agreement, and it is undisputed that the negotiation and drafting of the unexecuted agreements occurred in New York. Those agreements required no performance in Florida, nor did any meetings concerning the venture take place in Florida. The appellants do not have an office in Florida and do not hold a license to operate in Florida. Thus, contrary to the trial court's ruling, the defendants did not carry on a business venture in Florida. *See Stonepeak Partners*, 231 So. 3d at 557 (rejecting finding that appellant engaged in a business venture in Florida even where several meetings took place in Florida). Consequently, the first prong of the jurisdictional analysis was not established.

## Minimum Contacts

The trial court correctly recognized that the due process element of *Venetian Salami* is satisfied "if the defendant purposefully directs activities at Florida and litigation arises out of those activities, or the defendant purposefully avails himself of the privilege of conducting activities within the forum state." *Beta Drywall Acquisition, LLC v. Mintz & Fraade, P.C.,* 9 So. 3d 651, 653 (Fla. 4th DCA 2009) (citation omitted). The trial court was persuaded that Wrapapan could and should reasonably anticipate being brought into a Florida court because Wrapapan contacted Elson at his office in Florida and requested that he engage in business for Wrapapan from Elson's Florida office. The trial court considered Wrapapan's declarations, in which Wrapapan attested that it never conducted business in Florida, but found that they were contradicted by emails between the parties. Our review of the documents does not support this conclusion. None of the emails concerned the nonresidents or established their contacts with Florida. At the very best, the emails merely showed that Elson resided in Florida during the negotiations, which colloquially speaking is neither here nor there.

No evidence was presented that the would-be business venture ever anticipated conducting any activities in Florida. The only apparent connection to Florida was that, at some point during the parties' discussions, Elson apparently moved to Florida. As previously suggested, where Elson might reside is not legally relevant to the terms of the unexecuted agreement. *See generally Empire Indus., Inc. v. Kaplan,* 695 So. 2d 919, 920-21 (Fla. 4th DCA 1997) (finding sufficient minimum contacts to satisfy due process requirements where, in addition to an agreement establishing a business venture that contemplated development and marketing of a toy in Florida, the defendants traveled to Florida several times to negotiate the contract, sent artwork to Florida for

5

approval, and assisted the research and development team in constructing prototypes in Florida). In today's worldwide economy where people now work remotely from literally anywhere on the globe, the mere residence of one of the parties to a business arrangement—without more—cannot be sufficient to satisfy the minimum contacts required under a due process analysis.

For these reasons, we reverse the trial court's order denying appellants' motion to dismiss and remand for entry of an order dismissing the complaint against them for lack of personal jurisdiction. Consequently, we need not address appellants' forum nonconveniens argument.

*Reversed and remanded.*

WARNER and MAY, JJ., concur.

*      *      *

**Not final until disposition of timely filed motion for rehearing.**